BAILEY v. AMERICAN DEPOSIT & LOAN CO.

(Supreme Court, Appellate Division, First Department.   June. 8, 1900.)

1. PLEDGE—FORFEITURE—WAIVER.
      Though insured and the beneficiary pledged a life policy as security
   for their note, with right to the pledgee, on their failure to make payment
   when due, to surrender the policy to the insurer, and receive the surrender
   value, without notice to him, such right is waived, so.that it cannot be
   exercised without notice, where, in reply to letter from insured, after pay-
   ment was due, asking for extension till September 30th to pay interest,
   the insurer wrote that he could have a few days.

2. CONVERSION—LIFE POLICY—DAMAGES.
      A pledgee of a life policy, having waived right to surrender it to the
   insurer, and receive the surrender value without notice, is guilty of conver-
   sion where, with notice of the serious sickness of insured, he, without
   notice to the pledgors, makes a surrender to the insurer a few days before
   insured's death;  the measure of damages for which is the face of the
   policy, less the amount due the pledgee.

Appeal from trial term, New York county.

Action by Alfred D. Bailey, ancillary administrator of Parthenia
Gordon, deceased, against the American Deposit & Loan Company.
From judgment dismissing the complaint on trial before a jury, plain-
tiff appeals.  Reversed.

Argued before PATTERSON, P. J., and RUMSEY, INGRAHAM,
and McLAUGHLIN, JJ.

George H. Fletcher, for appellant.
Allan McCulloh, for respondent.

INGRAHAM, J.   The facts in this case are not seriously disputed.
The court having dismissed the complaint, the only question is wheth-
er, upon the facts proved, the plaintiff was entitled to any relief.   It
appeared that on or about the 6th of September, 1895, the Equitable
Life Assurance Society had issued a paid-up policy of insurance upon
the life of one Charles G. Gordon for $4,400, wherein the plaintiff's
intestate, the wife of the said Gordon, was named as beneficiary.   It
appears that on or about September 11, 1897, the said Charles G.
Gordon and Parthenia Elizabeth Gordon, his wife (plaintiff's intes-
tate), borrowed from the defendant the sum of $1,716, and gave to it
their promissory note by which the obligors agreed to pay to the de-
fendant the sum of $1,826 on September 11, 1898;  and as collateral
security for the said indebtedness they assigned this policy of insur-
ance to the defendant.   This promissory note gave to the defendant
authority "to surrender said policy to the Equitable Life Assurance
Society of the United States and receive the surrender value thereof
(said value to be determined by said society) on the nonperformance of
any of the promises herein contained, without notice of amount
claimed to be due, without demand of payment, without advertise
ment, and without notice of the time and place of said surrender, each
and every of which is hereby expressly waived."   On September 19,
1898, after the note had become due, Mr. Gordon wrote to the defend-
ant:

"I have just returned home. Found your letter of the 9th inst. If you will kindly extend the time to Sept. 30th, it is almost possible to say that I can pay the interest & also the interest due since Sept. 11th. Please ans. me at once, as a few hours would make a great difference to me."

In reply to that letter, on September 22, 1898, the defendant wrote to Gordon as follows:

"We beg to advise you that if you wish to continue this loan for another year you must remit to us promptly the interest ($109.94) according to the notice which we inclose herewith. We will hold the matter open for a few days to give you an opportunity to meet this payment, but you must arrange the matter without any further delay, as we sent you ample notice advising you of the maturity of the loan."

On October 4, 1898, Alfred D. Bailey, a son-in-law of Mr. Gordon, wrote to the defendant as follows:

"Yours of some days ago to Capt. C. G. Gordon handed me to-day. In reply would say that Capt. Gordon is at present quite ill, and unable to attend to any business. As soon as he is able, he will communicate with you."

No further communication was received from the defendant. Capt. Gordon died on the 26th of October, 1898, having been taken ill on the 30th of September, when he became delirious, and remained so until the time of his death; and without notice of any kind to the makers of the note, or those interested in the policy, the defendant, on the 12th day of October, 1898, surrendered the policy to the Equitable Life Assurance Society, and received from it $1,843.60 in full of all claims under the policy, and subsequently tendered to the maker of the note a check for $7.87, being the cash surrender value of the policy, less the amount due to the defendant. The court below dismissed the complaint upon the ground that there was no evidence of a waiver by the defendant of the right to surrender the policy on the nonpayment of the note. There can be no doubt that upon the failure of the obligor to pay to the defendant the amount due on the 11th of September, 1898, the defendant was authorized to surrender the policy to the assurance society, and receive the surrender value thereof, without notice of any kind to the obligor. The question is whether anything that the obligee did waived this right to surrender the policy to the assurance society without notice. When the note became due on the 11th of September, the defendant did not enforce this right. What it did was to enter into negotiations for the extension of the loan. The obligor requested an extension of time to the 30th of September, to pay the interest for another year, which would entitle him to a renewal of the loan; and no doubt, if the defendant had accepted that proposition with the statement that the obligor would be in default unless the arrangements for the new loan were completed by that day, the plaintiff could not have complained if the defendant, at the time specified, had exercised its right to surrender the policy of insurance. That, however, the defendant did not do. It stated to Mr. Gordon that, if he wished to take the loan for another year, he would be required promptly to remit the interest according to a notice sent, and that defendant would hold the matter open for a few days to give him an opportunity to meet this payment. Here was an indefinite extension of the time to make the payment, which, if made, would have been a valid exten-

sion of the note for another year. During this indefinite time, however, when such payment was to be made, and a new contract for another year closed, the defendant had waived its right to resort to the forfeiture contained in the original note, and, without notice, to surrender the policy of insurance. It would not, I think, be claimed that the defendant, the day after writing the letter, would have been justified in surrendering the policy, and enforcing the forfeiture without notice to the obligor. If not on the next day, on just what day would the right of the defendant to enforce this forfeiture accrue? Its notice to the obligor was to the effect that he would have a few days, and that the matter would be left open for that time to give him an opportunity to meet the payment. The defendant allowed the matter to rest in this indefinite way without further notice to the obligor. On the 4th day of October a letter was written by the plaintiff to the defendant, which was in form a reply to the defendant's letter of September 22d, stating that Mr. Gordon was quite ill, and unable to do any business. No answer seems to have been made to this letter. No notice of any kind was given that the few days allowed by the defendant to the obligor to close the proposition made by the defendant to extend the loan for another year had expired; nothing to fix a definite time in which the loan must be paid, or the arrangements for the continued loan consummated. On the 14th of October, and without further notice, and with knowledge of the fact that the assured was quite ill, and unable to attend to business, the defendant surrendered the policy; thus forfeiting the pledge given to secure the payment of the indebtedness. If defendant had waived its right to thus forfeit the pledge without notice, such a forfeiture was a conversion of the policy, for which the defendant would be liable. The rule to be applied to this case is recognized and settled by the case of Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059, which was an action for the conversion of a life insurance policy under conditions somewhat similar to those under consideration, and the rule as stated there is:

"The pledgee doubtless has the right to exact strict performance of the contract according to its terms, and upon default in the payment of the debt at the time stipulated he may, under a contract like this, dispose of the pledge. But if he waives the right to exact strict performance, and gives time and indulgence to the debtor, he cannot recall this waiver at his option, without notice to the pledgor, to the end that the latter may have an opportunity of protecting the pledge. The good faith which the law exacts from a person dealing with trust property will not permit the pledgee, after having once waived the forfeiture or the right to dispose of the pledge upon default of payment at the prescribed time, to suddenly stop, and insist upon the forfeiture for the nonpayment of the debt, when the party is unprepared to redeem."

It would seem that the exact conditions there referred to were presented here. The defendant certainly gave the pledgor the right to pay the note or accept the conditions imposed for the extension of the loan for another year. Having thus waived its right to dispose of the pledge upon the failure of payment on the day it became due, it cannot insist upon a forfeiture without notice to the pledgor, or without giving him reasonable opportunity to redeem the pledge. We think, therefore, that it was error for the learned court to dismiss the complaint upon the ground that there was no evidence of waiver of the

right to forfeiture.    We think that the plaintiff was entitled to recover as damages the difference between the amount due to the defendant and the amount due from the insurance company.    In Toplitz v. Bauer, supra, it was said:

"It is obvious that the surrender value, or what the company was willing to pay for it, based upon tables of mortality applied to a sound risk, would be no indemnity for the loss.    The reasonable and just rule of damages in such a case would seem to be the cost of replacing the policy on the same terms in a perfectly sound company at the time of the surrender; but the pledgor had then ceased to be an insurable risk under any circumstances existing in the business of insurance, so that the real loss was the face of the policy, less what it would cost to carry it by payment of another premium which fell due before the death of the insured."

Here the defendant had notice given that the insured was sick, and unable to attend to business,—in fact, he died a few days after the surrender of the policy; and as it was clearly impossible for the plaintiff to obtain a new policy on the day whereon he had notice that the defendant had violated its obligations, the proper measure of damages would be the difference between the amount due to the defendant and the amount that would have been received from the insurance company if the defendant had not wrongfully forfeited the policy in violation of its duty to the pledgor.    It follows, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.