## WYCKOFF, CHURCH & CO. v. RIVERSIDE BANK.

(Supreme Court, Appellate Division, First Department.  December 10, 1909.)

1. PLEDGES (§ 29*)—CONTRACTS—RIGHT OF PLEDGEE.

A contract whereby the debtor pledges collateral to secure a debt is one of bailment, but the right of the pledgee to sell for the payment of the debt may be waived by the extension of the time of payment with or without consideration.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 74; Dec. Dig. § 29.*]

2. PLEDGES (§ 29*)—CONTRACTS—RIGHT OF PLEDGEE.

Where the payee in a demand note secured by collateral with the right at its option to sell the property, whether the obligation was due or not, extended the note for a specified time for a specified consideration, without reserving the right to sell the collateral before the expiration of the extended time, he could not sell it before such expiration, especially where he misled the maker to believe that the agreement to extend carried with it a suspension of the right to sell.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 74; Dec. Dig. § 29.*]

3. BANKS AND BANKING (§ 109*)—OFFICERS—POWERS.

The vice president of a bank, who is in charge thereof, has authority to bind the bank by extending the time of the payment of a demand note for a specified time and for a specified consideration, and suspending the right to sell collateral until the expiration of the extended time.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 257–260; Dec. Dig. § 109.*]

4. BANKS AND BANKING (§ 114*)—CONTRACTS BY OFFICERS—RATIFICATION.

Where a bank through its executive committee retained the money paid to its vice president in consideration of a contract made by him, the act of the vice president was ratified, though it was originally unauthorized.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 279; Dec. Dig. § 114.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL.

Where the verdict was supported by the evidence and no error was committed on the trial, and the court set aside the verdict and dismissed the complaint on an erroneous theory of the law, the court on appeal will set aside the judgment of dismissal and reinstate the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Trial Term, New York County.

Action by Wyckoff, Church & Co. against the Riverside Bank. From a judgment dismissing the complaint, and from an order setting aside a verdict for plaintiff, and directing the dismissal of the complaint, plaintiff appeals. Reversed, and verdict reinstated.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

George H. Fletcher, for appellant.
A. Delos Kneeland, for respondent.

HOUGHTON, J. On the 5th of July, 1907, the defendant held the plaintiff's demand note for $20,000, and as collateral security for its payment there was pledged 150 shares of the common stock of the Borden Condensed Milk Company. The note was collateral in form, and specified the collateral already held and promised to furnish such additional collateral as the officers of the defendant might require. The provisions of the note with respect to the sale of such collateral were as follows:

"And we hereby give to said bank, its president, vice president, cashier or assistant cashier, full power, at their option, to sell, assign and deliver the whole or any part of said collaterals, or any substitutes therefor or additions thereto at any broker's board, or elsewhere, at public or private sale, on the nonperformance of the above promises, or of any of them, or at any time thereafter, and without demand, notice or advertisement. * * * And it is further agreed that the undersigned do hereby authorize and empower the said bank, at its option, at any time, to appropriate and apply to the payment and extinguishment of any of the above named obligations or liabilities, whether now existing or hereafter contracted, any and all moneys, securities or other property now or hereafter in the hands of such bank on deposit or otherwise, to the credit of or belonging to the undersigned, whether the said obligations or liabilities are then due or not due."

The defendant bank also held other notes aggregating $36,500 for loans made to members of the plaintiff corporation which were carried as companion transactions, making an aggregate of $56,500 of loans made by the defendant to the plaintiff or those associated with it. Interest was paid on the $20,000 note to September 1, 1907, and again to October 1st of the same year, upon statements made by the defendant to the plaintiff. On the 8th of October the defendant demanded payment of the note as well as the balance of the loans made to those associated with the plaintiff. A representative of the plaintiff called upon the officers of the defendant, and such negotiations were had that, as the plaintiff claims, in consideration of the payment of 1 per cent. commission, the defendant through its vice president, Brower, acting as president and in charge of the bank, agreed to extend the time of payment of the $20,000 note and the other notes aggregating $36,500 for the term of four months. The plaintiff paid to the defendant on the 11th day of October $565, which was 1 per cent. on the aggregate of the loans, but which defendant claims was not paid as consideration for an extension of the time of payment, because no such agreement was made. After this payment, nothing further was done until October 19th, when defendant's cashier wrote a letter which was received by the plaintiff on the 21st demanding payment of the $20,000 loan. On the day following another demand for payment was made by Mr. Brower; he stating that the executive committee which was in charge of the affairs of the bank because of the financial panic prevailing declined to extend the loan. The plaintiff refused to pay,

standing upon its alleged agreement for an extension.  On the following day, October 23d, the defendant gave notice that it would sell the securities deposited as collateral, without naming, however, time or place, and the plaintiff by letter forbade the sale on the ground that the loans were not due because of the alleged agreement to extend the time of payment.  On this same day the defendant wrote another letter demanding additional collateral, reserving, however, whatever, rights it had on the alleged default of payment on the part of the plaintiff.  The plaintiff tendered additional collateral, which was refused, not because it was unsatisfactory, but because the bank wanted cash instead of the collateral.  In the afternoon of this same day, and shortly after the tender and refusal of the additional security, the defendant sold the 150 shares of Borden Condensed Milk stock, as the plaintiff subsequently learned, and this action is brought for a conversion of the same.  The price received by the defendant on the sale of the stock was about $92.50 per share, and the plaintiff proved that within two days of January 27, 1908, when it first learned of the sale, the price was $145 a share.  The offset of the defendant was the $20,-000 note and interest, leaving a balance due plaintiff, if its contention that defendant had no right to sell the collateral was correct, of $3,-371.75 including interest, and the jury rendered a verdict for plaintiff in that amount.  A motion to dismiss the complaint had been reserved until after the verdict of the jury, and, on subsequent consideration, the court granted the motion for dismissal, and set aside the verdict and directed judgment to be entered in behalf of defendant, dismissing plaintiff's complaint.  The jury by their verdict found that an agreement for four months' extension was in fact made, and that the $565 was paid as consideration therefor.  The learned trial court set aside the verdict and granted the motion for dismissal of the complaint on the ground that, notwithstanding the existence of an agreement to extend the time for payment of the note, the other portions of the contract embraced in the note were not affected, and hence that the defendant bank had the right to sell the collateral at any time it saw fit.

We are of the opinion this view was erroneous.  A contract between the debtor and creditor whereby the debtor pledges collateral to secure the payment of his debt is one of bailment, and certain duties are imposed upon the pledgee.  Such a contract is of such class that the right to sell the security for the payment of the debt may be waived by the mere extension of the time without any new or independent consideration, and also by the conduct of the parties.  Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059; Bailey v. American Deposit & Loan Co., 52 App. Div. 402, 65 N. Y. Supp. 330, affirmed 165 N. Y. 672, 59 N. E. 1118.  If the right to sell collateral can be waived by mere agreement without consideration, or by the course of conduct between the parties, it surely can be waived by a new and independent contract founded upon valuable consideration.

All the circumstances surrounding the transaction show that the plaintiff understood that by payment of the 1 per cent. commission, not only the time of payment of the note was extended, but that the right

of the defendant to sell the collateral was suspended until the expiration of four months from October 11th. The note was payable on demand, and demand had been made. It is true that the defendant bank was in distress, but so was the plaintiff, and it immediately set about the making of some arrangement to avoid raising the money at that particular time as well as to avoid having its collateral sacrificed in a panicky market. The negotiations resulted in the payment of a certain bonus and an agreement to change the note from one on demand to one payable at a specified time. While nothing was said respecting the right of the defendant to sell the collateral at any time it saw fit, all parties must have understood if the agreement was in fact made that the collateral would not be sold until ultimate default in payment.

For the purposes of its argument, the defendant concedes that the agreement found by the jury to have been made operated to extend the time of payment of the loan, but insists that, inasmuch as there was no specific agreement with respect to the sale of the collateral, the last clause of the note giving the right to sell at any time whether the liabilities of the plaintiff were then due or not due survived the agreement for extension. If the defendant desired to retain this right, it should have so notified the plaintiff at the time the extension agreement was made. In the absence of any express reservation, the conduct of the defendant was such as to mislead plaintiff and to induce it to suppose that the agreement to extend the time of payment carried with it a suspension of the right to sell the collateral until the extended time should have expired. Confessedly the $565 was paid, and the defendant cannot escape from a contract made by its vice president on the ground that the executive committee of the bank refused to carry it out. The vice president was in charge of the bank, and had authority to make contracts respecting its business. Besides, the defendant through its executive committee could not retain the money paid to its vice president and repudiate his act. If they accepted the fruits of his action, it was a ratification of his act even if it was originally unauthorized. Our conclusion is that the sale of the plaintiff's collateral was unauthorized; and hence that an action for conversion was maintainable, and that the dismissal of the complaint was error.

The defendant asks that we permit the order setting aside the verdict to stand, even though we come to the conclusion that the dismissal of the complaint was erroneous. The learned trial court seemed to have no doubt as to the correctness of the verdict of the jury, or that it was in any manner against the weight of evidence, if the plaintiff's theory of the action was correct. Nor do we find that the verdict is against the weight of evidence. Indeed, there are many circumstances confessed by the defendant's witnesses corroborating the plaintiff's version of the transaction. We see no grounds for submitting to another jury the question as to whether or not the extension agreement was in fact made. The measure of damages was proper and properly proven, and there seems to have been no error committed upon the trial except the fundamental one which we have discussed.

The judgment dismissing the plaintiff's complaint should be re-

versed as well as the order setting aside the verdict, with costs, and the verdict reinstated.   All concur.

INGRAHAM, J. (concurring).   I agree with Mr. Justice HOUGH-TON in the reversal of this judgment.

The result of the agreement between the plaintiff's president and the defendant was to give an extension upon these three notes for four months.   That agreement was based upon a sufficient consideration and was binding upon the defendant.   The effect of this agreement was, I think, to change the loans from demand loans to loans for four months.   I do not think it can be construed as changing any of the other terms and conditions upon which the loans were made. The loans were still secured by the collateral originally deposited, and the bank had the right to call for additional security.   Upon a failure of the debtor to furnish such additional security, or to pay the loan when due, the bank was authorized to dispose of the collateral security, but had not such right, except upon a failure of the obligors to comply with some demand made by the defendant which the note authorized it to make.   If the plaintiff had failed to furnish the additional security called for, or to pay the note when due, the bank had the right then to sell without notice the collateral securities and to apply the proceeds to the payment of the obligations.   It also had the right to apply any other property of the maker of the notes in its hands to the payment of any balance due to the defendant.   The last clause of the stock note which authorized the bank to appropriate and apply to the payment and extinguishment of this obligation all moneys, securities, or other property now or hereafter in the hands of the said bank could only be applicable upon the default of the maker of the note to perform some of their obligations.   This clause did not authorize the bank before the note became due, and when the maker of the note had performed all of its obligations, to sell either the collateral or other property of the makers of the note in the hands of the defendant to pay the loans.   When additional securities were demanded by the defendant, the obligors tendered to the bank additional securities which the bank declined, not because they were not sufficient, but because they insisted on a repayment of the loan notwithstanding the agreement to extend it for four months.

I think, therefore, that the sale was unauthorized and was a conversion, and that the plaintiff was entitled to recover.   I agree with Mr. Justice HOUGHTON that there was no error on the trial which would justify us in ordering a new trial.

The judgment dismissing the complaint and the order setting aside the verdict must be reversed, with costs, and judgment directed for the plaintiff upon the verdict, with costs.