## ATKINSON v. BANK OF MANHATTAN TRUST CO.

No. 5081.

Circuit Court of Appeals, Seventh Circuit.

March 22, 1934.

Alfred D. Sutherland, of Fond du Lac, Wis., for appellant.

Bruno V. Bitker, Joseph E. Tierney, and Irving A. Puchner, all of Milwaukee, Wis., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

By this action which was instituted October 11, 1932, appellee sought to recover a balance of $8,678.11, upon a promissory note executed by appellant for the sum of $50,000, for the payment of which there had been pledged as collateral 2,723 shares of the common stock of J. C. Penney Company. 1,000 of those shares were owned by one Nicol who had agreed in writing with appellee that they might be pledged as security for the payment of the note in suit. The remaining shares were owned by appellant. The note in suit was executed May 13, 1932, bearing date of May 18, 1932. It was due and payable four months after date at appellee's office in New York, with 6% interest per annum from date, and was given in renewal of a note of like tenor and amount maturing on May 18, 1932. Each note provided that if at any time the security became unsatisfactory to appellee, and if appellant on demand failed to furnish further security or make payment to appellee's satisfaction, the note would forthwith become due and payable without further notice.

Before the note in suit matured, appellee notified appellant and Nicol that the security was unsatisfactory, and demanded that further security be furnished, or a payment satisfactory to appellee be made. This they failed to do, and thereupon appellee sold the collateral stock and applied the proceeds to the payment of the note reducing it to the amount demanded.

The answer denied liability. It alleged that appellee had accepted the note in suit with interest to the date of maturity and that a separate contract was thus made between the parties whereby appellant was to have the use of the money until maturity of the note; that the collateral at the date of maturity was worth more than the debt, and

that its sale before that time and during a depressed market was contrary to their agreement and constituted full payment of the obligation. A separate defense alleged that appellee did not use due diligence in an effort to secure a reasonable or fair price for the collateral, thereby causing a loss to appellant equal to the amount demanded by appellee.

Included in the answer were three paragraphs of counter-claim. The first alleged that on May 15, 1932, appellant instructed appellee to sell the Nicol stock held as collateral which at that time was worth $23 per share on the New York Stock Exchange, and that appellee's failure to do so resulted in damage to appellant in the sum of $8,127.50. The second paragraph alleged a duty resting upon appellee not to sell the collateral until there was a failure to pay the note at maturity; that appellee in violation of that duty and in connivance with others sold the collateral before maturity at less than the stock was worth without making an effort to find a purchaser at a fair and reasonable price, and as a result thereof, appellant was damaged in the sum of $10,000. The third paragraph of counter-claim alleged payment of interest to maturity, and charged appellee with knowledge that a large number of shares of stock of the J. C. Penney Company were held as collateral to various other obligations which would be sold by appellee and other banks if the market value went below $20 per share. It also alleged that with reasonable diligence appellee could have sold all the collateral which secured the note in suit for more than sufficient to pay appellant's obligation, and that it negligently failed to do so to appellant's damage in the sum of $8,678.11.

Appellee replied to the counter-claims, and later, in compliance with section 270.635, Wisconsin Statutes (1931),[1] filed its motion supported by affidavit, to strike the answer and to enter judgment against appellant for the amount demanded in the complaint. Appellant thereupon moved for judgment dismissing the complaint and for judgment upon his second counter-claim. He also filed an affidavit in support of that motion and one in response to appellee's motion for judgment.

The affidavit in support of the motion to dismiss the complaint and for judgment for appellant admitted the execution of the note in suit and the pledge of collateral. Appellant stated in it that the note was executed in Wisconsin and mailed to appellee at New York with a letter on May 13, 1932, in renewal of a note of like tenor and amount maturing on May 18, 1932; that upon receipt of the note and letter, appellee received and accepted from appellant interest on the note in advance to the date of maturity; that the J. C. Penney stock had fluctuated in selling price on the New York Stock Exchange before and after May 7, 1932, and on that date appellant by letter called appellee's attention to the fact that the Penney stock had been selling for prices inconsistent with its value; that in accordance with appellant's letters of May 7, and May 13, 1932, he had every reason to and did believe that appellee would accept the renewal note and the interest payment in advance, and that in so doing, a new contract was created to the effect that appellee would carry appellant to the maturity of the note and not sell the collateral unless the note was not paid at maturity; that the collateral was sold between May 27, and June 28, 1932, for $40,624, notwithstanding the fact that its selling price on May 19, 1932, on the New York Stock Exchange was $21 per share, thereby damaging appellant in the sum of $7,183; that after the maturity date the value of the stock increased on the same exchange from time to time until on July 17, 1933, it reached $46 per share.

Appellant's affidavit in response to appellee's motion to strike the answer and for judgment reaffirmed the allegations of the answer and of his affidavit in support of his motion to dismiss the complaint, and alleged generally that his loss was sustained on account of appellee's negligence and lack of diligence. He further stated on information and belief that the president of the J. C. Penney Company was also a director of appellee at the times mentioned in the complaint, and that appellee and its officers were familiar with the financial condition, earn-

[1] "When an answer is served in an action to recover a debt or liquidated demand arising on a contract, express or implied, sealed or not sealed, or on a judgment for a stated sum, the answer may be struck out and judgment entered thereon on motion and the affidavit of the plaintiff or of any other person having knowledge of the facts, verifying the cause of action and stating the amount claimed, and his belief that there is no defense to the action; unless the defendant by affidavit, or other proof, shall show such facts as may be deemed, by the court hearing the motion, sufficient to entitle him to defend."

ings, and the book value of the stock of that company; that they knew or could have known by the exercise of reasonable diligence that the collateral could have been sold at a price in excess of appellant's obligation to appellee; that appellee was familiar with the general stock exchange manipulations and the financial situation as it then affected the market price of the Penney stock which was quoted and frequently sold on the New York Stock Exchange; that it knew or reasonably should have known of collateral being held by other banks in New York, belonging to others situated similarly to appellant, and that under those circumstances appellee united with others in causing sales of the Penney common stock to be made at a depressed price far below its actual worth; that the note in suit was given and the collateral pledged at a time when appellee knew or reasonably should have known that stock exchange values of this and other stock generally were subject to depreciation and manipulation and all stocks were being sold or would be sold at prices far below their actual value; that this loan was made upon the basis of actual value rather than selling price upon the New York Stock Exchange, and appellee knew that this collateral did not vary, except to increase in actual value, because of the strong financial condition of the company, unless it was subjected to manipulation by brokers, bankers and others; that when appellant executed the note he was led to believe that appellee would give due consideration to the real and fair value of the collateral rather than the New York Stock Exchange price, and that the collateral would be held until maturity of the note unless the actual value became greatly depreciated, and that he relied upon said representations when he renewed the loan. It was further stated that the allegations of the first counter-claim were reaffirmed, and, with respect to the third counter-claim, it was stated generally on information and belief, that appellee did not exercise reasonable diligence in the sale of the collateral.

The District Court overruled appellant's motion to dismiss the complaint and for judgment on his second counter-claim, and sustained appellee's motion to strike the answer and for judgment against appellant, and judgment was entered accordingly. In making those rulings, the court stated that any questions respecting the power of federal courts to recognize the summary judgment statute of Wisconsin were immaterial because, upon appellee's motion and the pleadings and affidavits of both parties, the

issue tendered by the complaint and appellant's counter-claim was conceded to be one of law, determinable upon the uncontroverted facts.

We think the court's rulings were proper. It is obvious that the only question presented was whether as a matter of law the collateral pledged to secure the note in suit was rightfully sold under the acceleration clause, prior to the maturity of the note. Appellant's negative answer to this question was based on the two letters written by himself to appellee on May 7, and May 13, 1932, which were set forth in appellee's affidavit, and upon the fact that interest was paid in advance to the date of maturity, and he contended that thereby the right to sell the collateral was postponed until the maturity date, and even then it could not be sold unless appellant failed to pay the obligation at maturity. In the letter of May 7 appellant requested that blank notes be sent to him, and expressed surprise at the price for which Penney stock was then selling, adding, "There is no question about the stability of the J. C. Penney Company, but that makes no difference when our stock is forced out." The letter of May 13, stated that appellant was enclosing a note to replace the one coming due on May 18; that it would be impossible for him to make a payment at that time as it was necessary to save the July dividend to meet his next interest payment; that he was trying to sell his home at fifty cents on the dollar in order to make payment on the note, but he was unable to do so. He further added, "You knowing the soundness of the J. C. Penney Company as you surely do, I thought that your bank would carry me through this time, and I sincerely hope that you will as I want to save my stock, and that is the reason I am trying to sell my home, I do not want to lose my stock."

It is obvious that the foregoing letters can not be considered as altering the terms of the note in suit or its acceleration clause, in any respect; nor can the fact that interest was paid in advance under the circumstances disclosed in any way affect appellee's right to avail itself of the acceleration clause before maturity if it reasonably deemed the collateral insufficient in value to protect the principal. It was not denied that such acceleration clause in a note as we have here is legal, and generally speaking may be enforced. There is a line of cases, however, upon which appellant relies, where there either was no acceleration clause, or where the original note contained such clause, and in-

terest was paid in advance for a period of time beyond maturity, without reiterating the acceleration clause. Those cases held that under the circumstances there present, the payor was misled, and the acceleration was not permitted. Typical of those cases is Wyckoff, Church & Partridge v. Riverside Bank, 135 App. Div. 400, 119 N. Y. S. 937. There the court said, "If the defendant desired to retain this right (of acceleration), it should have so notified the plaintiff at the time the extension agreement was made. In the absence of any express reservation, the conduct of the defendant was such as to mislead plaintiff and to induce it to suppose that the agreement to extend the time of payment carried with it a suspension of the right to sell the collateral until the extended time should have expired." It will be noted, however, in the instant case that the payment of interest in advance was on the note in suit which contained an acceleration clause, and the interest was not paid beyond maturity, hence there was no extension of the note. The mere payment of interest to maturity in advance is not sufficient to destroy the effect of a valid acceleration clause. It may be contended that the payment of interest in effect amounted to an extension of time for payment of the note falling due on May 18, 1932, for which the note in suit was a renewal. If this be conceded, that fact does not bring this case within the ruling in the Wyckoff case, supra, because at the time of the extension, appellee expressly reserved the right of acceleration and appellant could not have been misled with respect thereto. Furthermore, the extension of time was caused by the renewal note now in suit, and not by the payment of interest.

Appellee's affidavit set forth with particularity the transactions of the parties with respect to their correspondence, the entire agreement of the parties, the execution of the note, the pledging of collateral, the request for additional security, the failure to give it, and the sale of the collateral. It further showed the market value of the Penney stock on the New York Stock Exchange from May 17, to and including June 30, 1932, and that appellee received for the stock the market values prevailing in that market on the days on which it was sold, and that the entire amount less brokerage and taxes was credited on appellant's note, and that he was also given credit of $683.89 on account of interest which he had paid in advance. These facts were uncontradicted, and when appellee moved for judgment on his complaint and appellant countered with a motion to dis-

miss the complaint and for judgment on his second counter-claim, we think the court was warranted in concluding that the only question presented was a legal one, viz., was the sale of the collateral authorized by the agreement of the parties. It is true that there were other allegations in the answer, based on information and belief, which charged negligence generally in connivance with others in selling on a depressed market, and in not selling to a higher bidder, and in violating appellant's instructions to sell the Nicol stock at $23 per share. Appellee under oath denied these allegations, and the evidentiary facts disclosed in appellant's affidavits failed to show negligence or connivance, or that such instruction was given. The record affirmatively shows that the Penney stock was never quoted as high as $23 a share on the New York Stock Exchange from the date of the note to the time when the collateral was sold, and it was quoted at a lower price than that when the note matured. Moreover, the contract gave no authority to appellant to dictate the price at which the collateral should be sold. There was also an allegation in the answer that appellant believed that appellee was the purchaser of the collateral and was still the owner. This can hardly be considered as an allegation of fact, but if it be conceded to be true, it was authorized by the contract. Although the fact was not specifically pleaded nor substantiated by affidavit, we shall assume that the negligence relied upon was that there were prospective purchasers who would have bid more than the market price of the Penney stock had appellee exercised diligence in finding them. The contract, however, authorized appellee to sell the collateral at any broker's board, and presumably at the market price, as indicated in appellant's letter of May 7. The trial court proceeded on the theory that if the note with its agreement as to collateral were valid and in force there could be no negligence, for the uncontradicted allegations and affidavits showed that appellee had complied with the agreement in every respect.

The counter-claims were based on the same allegations contained in the preceding portion of the answer. The first one was based on the violation of instructions to sell the Nicol stock alleged to have been given by appellant to appellee prior to the date of the note in suit. This was denied in appellee's affidavit, and it was reaffirmed without further elucidation in appellant's affidavit. The second counter-claim squarely raised the legal question hereinbefore discussed, and stated further that appellant believed there

was negligence and connivance in the sale of the stock, which latter statement also constituted the basis of the third counter-claim. Under these circumstances we think the trial court was right in holding that the note and its collateral agreement were not in any way affected by appellant's letters, or the prepayment of the interest, and that that ruling obviated the necessity of passing on all other issues raised or attempted to be raised, because the bases of those issues were destroyed by the ruling.

We are also convinced that the federal courts have the power to recognize the summary judgment statute of Wisconsin and that appellee was entitled to the judgment rendered under the motions and affidavits filed thereunder. It is obvious that appellant's affidavit was not sufficient to avoid the judgment. It is intimated that appellee's motion to dismiss the answer does not include the counter-claims. This position is not tenable. While a counter-claim is not technically a mere matter of defense, yet it is frequently classed as a defense in the various codes, including Wisconsin. Wisconsin Statutes (1931), §§ 263.13 and 263.14 (2).

Judgment affirmed.