(94 Misc. Rep. 203)

## SCHOENBERG v. MUTUAL PROFIT REALTY CO.

(Supreme Court, Appellate Term, First Department.   March 30, 1916.)

1. BANKS AND BANKING ⬅➡315(1)—PROFIT-SHARING BONDS—PREMIUMS—
WAIVER—EVIDENCE.

In an action to recover the aggregate of monthly payments made by
plaintiff to defendant under an instrument called a "Profit-Sharing 5%
Savings Bond," with compound interest, evidence *held* to show defendant's
waiver of strict performance of the terms of the instrument, defeating
any forfeiture of plaintiff's right to recover because his payments. had
not been regularly and promptly made.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219;
Dec. Dig. ⬅➡315(1).]

2. BANKS AND BANKING ⬅➡315(1)—PROFIT-SHARING BONDS—DEFAULT IN PRE-
MIUMS—ESTOPPEL.

In such action defendant, having by its letter of July 2, 1914, induced
plaintiff to make further payments to prevent his bond from lapsing into
a nonprofit-sharing paid-up bond, in the belief that he might avail him-
self of a cash surrender privilege at the end of six years on July 1, 1915,
and that any irregularity in his payments would be waived if he con-
tinued payments to that date, after his payments on the expressed un-
derstanding that he would withdraw all cash payments at the end of six
years, could not repudiate the obligation to repay at that time the
entire amount received, with compound interest, as provided by the
bond.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219;
Dec. Dig. ⬅➡315(1).]

3. BANKS AND BANKING ⬅➡315(2)—PROFIT-SHARING BONDS—AUTHORITY OF
AGENT—ESTOPPEL.

A mutual profit realty company, whose letter to a bondholder was sign-
ed by one as "assistant to the president," and the language of which
showed that the writer had access to its files and the previous correspond-
ence, could not urge that the letter was not authorized.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig.
⬅➡315(2).]

4. BANKS AND BANKING ⬅➡315(1)—PROFIT-SHARING BONDS—PLEADING—
WAIVER.

The allegation of the complaint, in an action to recover the aggregate
payments made by plaintiff under a profit-sharing savings bond, that he
had performed all terms imposed upon him by the bond and had made pay-
ments as provided thereby, was an allegation of the ultimate fact, enti-
tling him to show waiver or estoppel in respect to forfeiture for irregulari-
ty of payments, as he was not required to plead the facts constituting the
evidence of such estoppel.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219;
Dec. Dig. ⬅➡315(1).]

5. BANKS AND BANKING ⬅➡315(1)—PROFIT-SHARING BONDS—DEFAULT IN PAY-
MENTS—WAIVER BY NEW AGREEMENT.

In such case plaintiff, who upon defendant's suggestion as to the re-
quirement necessary to reinstate his bond, which defendant claimed was
subject to lapse, and to preserve the privilege of withdrawing cash at the
end of the sixth year, agreed to continue his payments for six years to
avail himself of such surrender privilege, showed a new agreement waiv-
ing the condition as to regular and prompt payments.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219;
Dec. Dig. ⬅➡315(1).]

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. BANKS AND BANKING ☞315(1)—PROFIT-SHARING BONDS—DEFAULT IN PAYMENT—WAIVER—CONSIDERATION.

Although time was stated to be of the essence of an instrument called a "Profit-Sharing 5% Bond" in the clause providing for forfeiture in case of nonpayment of the installments during the first two years, and the penalty for delayed payments after that time was limited to a fixed rate of interest, which the company might exact on receiving such payments, the acceptance of a holder's payment was not an extension of the time for the payment of a debt, requiring a sufficient consideration to support it, but was a waiver of a condition upon which the forfeiture of a privilege was claimed to depend, and required no new or independent consideration.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219; Dec. Dig. ☞315(1).]

Appeal from City Court of New York, Trial Term.

Action by Max Schoenberg against the Mutual Profit Realty Company. From a judgment dismissing plaintiff's complaint on the merits after a trial by the court without a jury, he appeals. Reversed, and judgment directed for plaintiff.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Lesser Bros., of New York City (William Lesser and Jacob L. Kornicker, both of New York City, of counsel), for appellant.

Sayers Bros., of New York City (H. Schieffelin Sayers and John K. M. Ewing, both of New York City, of counsel), for respondent.

WEEKS, J.    This action was brought to recover the sum of $1,254.-36 and interest from July 1, 1915, being the aggregate of 72 monthly payments, with compound interest, made by plaintiff to defendant under an instrument called a "Profit-Sharing 5 per cent. Savings Bond," dated March 3, 1909. In the so-called "bond" the defendant agreed to pay to plaintiff on October 1, 1921, the sum of $3,000, together with a pro rata share of a so-called "partnership surplus profit account"; the consideration being a signed application for the bond, the payment in advance of $15 and the payment of a like sum of $15 on the 1st and not later than the 10th day of each calendar month until 144 successive monthly payments shall have been made. It was provided that, in case of 60 days' default in the payment of any installment due within 2 years, the amounts already paid might, at the option of the company, be declared forfeited as liquidated damages, and it was also provided, under the heading of "Privileges of Surrender before Maturity," that the surrender value should be for the full sum paid thereon, with 5 per cent. compound interest, as follows:

(1) At any time, to apply on the purchase of real estate from the company for such amount with accumulated profits as ascertained by the board of directors.

(2) At any time, for transfer to another person.

(3) At any time after two years, provided all payments have been made to the date of surrender, to receive a paid-up bond due October 1, 1921.

"(4) On the 1st day of January or July next succeeding the sixth or any succeeding anniversary of this bond, provided all payments hereon have been regularly and promptly made, the legal holder may, upon having given to the company six months' written notice of his intention, withdraw in cash all

payments made hereon with 5 per cent. interest on each installment, compounded annually to the date of withdrawal, but without any share in the profits of the company."

It was further provided, under the heading "E. Grace in Payments," as follows:

"A grace of ten days without interest charged shall be granted for the payment of every installment due hereunder, after the first. As the bond is based, however, on the prompt earning of compound interest on installment payments to be periodically made, the company shall collect a penalty of one-half of 1 per cent. for each month or fraction of a month that it is past due, on all payments that it may agree to accept later than ten days after their due dates."

It will be readily seen that this instrument contains many points of similarity to life insurance policies, and certificates of membership in building loan associations and mutual benefit associations, and its designation as a "savings bond," while possibly calculated to mislead investors of small means, is certainly novel and ingenious. It is my opinion that such a company, on the facts set forth in this record, should be held to a strict accountability for its acts and representations.

It is not disputed that, six months prior to July 1, 1915, the plaintiff gave to the defendant written notice of his intention to withdraw in cash the amount paid in with interest; but it is claimed that he forfeited his right to demand the same because of his failure to make all of the payments *regularly and promptly,* as required by paragraph 4 above set forth, and that he is only entitled to a paid-up bond due October 1, 1921, as provided for in paragraph 3.

The complaint alleged that the plaintiff had duly performed all terms imposed upon him by said bond, and had duly made payments for a period exceeding six years, and that such payments as were not regularly and promptly made were duly accepted by the defendant with the express understanding on the part of the defendant that all payments made by plaintiff were to be withdrawn in accordance with the privilege granted under paragraph 4 of the bond, quoted above.

Upon the trial plaintiff established that he had made payment of 72 installments; that, although such payments were not always punctual, they were accepted by defendant, which sometimes exacted a penalty and at other times did not; and that on December 28, 1914, after a conversation with the assistant to the president of defendant at its principal office in the city of New York, he delivered to the defendant a written notice of his intention to withdraw his money on July 1, 1915.

Prior to that time the plaintiff had been in correspondence with the defendant in regard to a sale of his bond and on June 29, 1914, his attorneys had written to the defendant, by letter addressed to its president, as follows:

"Your letter of June 22d has been received. We note it is doubtful whether Mr. Schoenberg's bond can be sold for some time. As we wrote you, Mr. Schoenberg is hardly in a position to continue payments on this bond, and in the meantime it appears from your letter of June 16th to him that you claim he is

in default of payment. We have advised with him, and it occurs to us that probably the best solution of this matter would be to let * * * the matter stand, and when he comes to cash the same in at the end of the sixth year according to the terms of the bond he will receive the reduced amount, all cash payments with 5 per cent. as named in the fourth paragraph of the bond. If this is satisfactory, advise us under the name of the corporation, and we will advise our client accordingly."

At this time plaintiff had not paid "regularly and promptly," but was entitled to a paid-up bond under paragraph 3 of the contract. Under date of July 2, 1914, the following reply was received:

"Your letter of 29th ultimo at hand, with reference to bond of Max Schoenberg. Replying thereto, we beg to advise you that it is not possible for us to change our bond contract. Mr. Schoenberg has the right at the present time to take a paid-up nonprofit-sharing bond for the amount he has paid in plus 5 per cent. interest to maturity, October 1, 1921. If payments are dropped now, however, he will not have the privilege of withdrawing cash at the sixth year, and we could not establish a precedent of this kind. He would have to continue his payments for six years in order to avail himself of this cash surrender privilege. As we advised Mr. Schoenberg some days ago, the bond is now subject to lapse into a nonprofit-sharing paid-up one without further notice from us, and if we do not hear from him, therefore, without delay we will carry the bond to the nonprofit-sharing account."

This letter was signed, "M. Turner, Asst. to the President." On July 7, 1914, plaintiff wrote defendant:

"I decided to keep my payment on my bond. I inclose you a check $15, * * * for which you please credit me, with the understanding that I can withdraw all my cash payments after six years in accordance with section 4 of your agreement."

On January 21, 1915, he wrote the following letter:

"Inclosed check for $60 for four months payments. * * * I send this money with the understanding that I draw my money paid in on July 1, 1915."

On January 27, 1915, he wrote defendant:

"I inclose you check $32.25, payment for two months and $2.25 penalty. I make this payment with the understanding that I can draw the paid-in money on July 1, 1915, with compound interest."

On each of these letters appears the stamp of the defendant, showing the receipt of the letters and money. On December 28, 1914, after a conversation in the office of the company with Miss Turner, who signed the letter of July 2d, the following notice was prepared and left there with her:

"New York City, December 28, 1914.

"Mutual Profit Realty Company, New York City, New York—Gentlemen: I hereby give notice that on July 1, 1915, I wish to withdraw in cash all moneys paid by me on bond No. 1161, with 5% interest thereon, as provided in said bond, paragraph 4, page 2, under 'Privileges of Surrender before Maturity.'

"Very truly yours,                                    Max Schoenberg (S)."

After the receipt of the letter of July 2, 1914, and prior to February 10, 1915, plaintiff paid to defendant the remaining installments necessary to complete 72 payments, which were received and accepted by defendant, together with the penalties. On August 19, 1915, the president of the defendant wrote the following letter:

"New York City, August 19, 1915.

"Lesser Bros., 299 Broadway, N. Y. City—Gentlemen: Referring to your call a few days ago regarding the Max Schoenberg bond, I beg to advise you that I have looked over the correspondence file and find that, while it was true Mr. Schoenberg sent, along with his last three remittances, a letter stating that he is making the payments with the understanding on his part that the bond would be surrenderable and the money withdrawn, on July 1st, I find no record of our having accepted the payments on this condition. However, I feel disposed to come to a fair settlement with Mr. Schoenberg, as it does not appear that we made any denial or statement to him that such privilege would not be granted. I will therefore ask the board to authorize payment of the Schoenberg bond at its next meeting.

"Very truly yours,　　　　　　　　　John W. Paris, President."

[1] Plaintiff for six years had paid the installments due under the terms of his bond. He gave in writing the required notice of his intention to withdraw his money on the 1st day of July next succeeding the sixth anniversary of the bond. It is true the payments were tardy at times, but the defendant accepted and retained the moneys. In view of the correspondence between the parties, such acceptance and retention constitute a waiver by defendant of the strict performance of the terms of the contract, and it is now estopped from claiming any forfeiture of plaintiff's right to recover because said payments were not "regularly and promptly made." The provisions of paragraph E, "Grace in Payments," apply to all payments which the company "may agree to accept later than ten days after their due dates," and the acceptance of such payments entitled the holder of the bond to all the privileges of surrender.

[2, 3] However, in view of the fact that the company by its letter of July 2, 1914, induced the plaintiff to make further payments in order to prevent his bond from lapsing into a nonprofit-sharing paid-up bond, it is unnecessary to construe this clause of the contract. That letter was offered in evidence by the defendant, and the signer had apparent authority to act for the company. It was written in reply to a letter addressed to the president of the company. The language of the letter shows that the writer had access to the files of the company and was familiar with the previous correspondence between the parties. She was the person whom plaintiff had seen in defendant's office on several occasions in July, 1914, and to whom he delivered on December 28, 1914, his notice of intention to withdraw his money, which notice was produced upon the trial from the files of the defendant corporation. The company will not now be heard to urge that the letter was not authorized. The plaintiff was induced to make further payments to defendant upon the belief that he would be repaid all of his money in July, 1915, and such rights as the defendant may have had must now be deemed waived. No inference can be drawn from the language of the letter:

"If payments are dropped now, however, he will now have the privilege of withdrawing cash at the sixth year, and we could not establish a precedent of this kind. He would have to continue his payments for six years in order to avail himself of this cash surrender privilege"

—except that plaintiff should have the right to avail himself of the cash surrender privilege, and that his irregular and tardy payments

would be deemed waived if he continued his payments and completed them within the six years. After the receipt of this letter all payments were made by plaintiff, as stated in his letters, with the understanding that he could "withdraw all cash payments after six years in accordance with section 4 of the agreement," and these payments, amounting to $195, with penalties of $4.04, were received and retained by defendant without comment.

There is no doubt that plaintiff at that time could have ceased making payments upon this bond, and the defendant could not have compelled him to make any further payments, as plaintiff had an absolute right to a paid-up bond, due in 1921, for the amounts actually paid, with compound interest, which is the only right the defendant is now willing to accord him. Having obtained this additional money from plaintiff by means of this letter, the defendant cannot be permitted to repudiate the obligation to repay on July 1, 1915, the entire amount received, with compound interest.

Upon the trial the court held that, as the complaint alleged that the payments which were not regularly and promptly paid were accepted with the "express understanding" that all payments were to be withdrawn on July 1, 1915, the plaintiff was not entitled to recover upon the theory of an estoppel, but was required to establish a new agreement waiving the condition of regular and prompt payment "founded upon changed positions of bondholder and company, whereby some other and different obligation was assumed by each of the parties," and further held that there was no proof of waiver or estoppel. In these views I think the trial judge was in error.

[4] The allegation of the complaint that the plaintiff duly performed all terms imposed upon him by the bond, and has duly made payments as provided by said bond, was an allegation of the ultimate fact as to which the estoppel applied and entitled plaintiff to show waiver or estoppel. He was not required to plead the facts constituting the evidence of such estoppel, and the allegation of an express understanding was therefore unnecessary. Feinberg v. Allen, 143 App. Div. 866, 128 N. Y. Supp. 906, affirmed 208 N. Y. 215, 101 N. E. 893; Davis v. Adler, 92 Misc. Rep. 458, 156 N. Y. Supp. 157.

[5] In this case, however, there was a new obligation assumed by each of the parties. The plaintiff, in order to meet the suggestion of defendant as to the requirements necessary to reinstate his bond, which the defendant claimed was subject to "lapse" into a nonprofit-sharing paid-up bond, and to preserve the "privilege of withdrawing cash at the sixth year," agreed to "continue his payments for six years in order to avail himself of this cash surrender privilege." This agreement the plaintiff performed and continued his payments, and the defendant thereby obtained from him money which otherwise he was not obliged to pay.

[6] Although time was stated to be of the essence of the contract in the clause providing for forfeiture in case of nonpayment of the installments during the first two years, the penalty for delayed payments after the expiration of that period was limited by paragraph E to a fixed rate of interest, which the company could exact if it exer-

cised its option to receive such payments. The acceptance of plaintiff's money was not an extension of the time for the payment of a debt which would require a sufficient consideration to support it, but was the waiver of a condition upon which the forfeiture of a privilege was claimed to depend, and therefore required no new or independent consideration. Toplitz v. Bauer, 161 N. Y. 325, 333, 55 N. E. 1059. As stated in Thomson v. Poor, 147 N. Y. 402, 409, 42 N. E. 13, 15:

"We know of no principle of law which will permit a party to a contract, who is entitled to demand the performance by the other party of some act within a specified time, and who has consented to the postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the nonperformance within the original time as a breach of the contract."

In considering the effect of failure to make punctual payment under life insurance policies the court said in De Frece v. National Life Ins. Co., 136 N. Y. 144, 151, 32 N. E. 556, 558:

"It is immaterial how the transaction may be legally designated. It has the element of advantage to the promisor or of loss to the promisee, or if there are mutual promises it may be upheld as a valid agreement supported by a sufficient consideration, or if the insurer by any declaration or course of action leads the insured to believe that by conforming thereto his policy will not be forfeited, if followed by due conformity on his part, it will operate as an equitable estoppel, and in either case the result will be the same. The forfeiture is not incurred, and the policy continues in force."

In Clark v. West, 193 N. Y. 349, 360, 86 N. E. 1, 5, the late Judge Werner, speaking for the court, said:

"A waiver has been defined to be the intentional relinquishment of a known right. It is voluntary and implies an election to dispense with something of value, or forego some advantage which the party waiving it might at its option have demanded or insisted upon (Herman on Estoppel and Res Adjudicata, vol. 2, p. 594; Cowenhoven v. Ball, 118 N. Y. 234 [23 N. E. 470]), and this definition is supported by many cases in this and other states. In the recent case of Draper v. Oswego Co. Fire R. Ass'n, 190 N. Y. 12, 16 [82 N. E. 755, 756], Chief Judge Cullen, in speaking for the court upon this subject, said: 'While that doctrine and the doctrine of equitable estoppel are often confused in insurance litigation, there is a clear distinction between the two. A waiver is the voluntary abandonment or relinquishment by a party of some right or advantage. As said by my Brother Vann in the Kiernan Case, 150 N. Y. 190 [44 N. E. 698]: "The law of waiver seems to be a technical doctrine, introduced and applied by the court for the purpose of defeating forfeitures. * * * While the principle may not be easily classified, it is well established that, if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterwards relied upon, a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked." The doctrine of equitable estoppel, or estoppel in pais, is that a party may be precluded by his acts and conduct from asserting a right to the detriment of another party who, entitled to rely on such conduct, has acted upon it.'"

As said by Judge Vann in Kiernan v. Dutchess Co. Mut. Ins. Co., supra:

"An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly. While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy."

In the present case the evidence conclusively establishes that the defendant, with full knowledge that plaintiff had not regularly and promptly paid his installments, waived its right to insist upon that defense provided plaintiff completed his payments within the six years, and by its letter and subsequent conduct in accepting plaintiff's payments and notice induced the plaintiff to believe that he would be entitled to receive his money on July 1, 1915, and is therefore now estopped from denying to him such right of recovery.

The judgment appealed from is therefore reversed, with costs, and judgment directed for plaintiff for $1,254.36, with interest from July 1, 1915, with costs. Submit findings of fact and conclusions of law in conformity with this opinion.

LEHMAN, J., concurs. DELEHANTY, J., concurs in result.