ROBERT S. STEVENS and FREDERICK C. STEVENS, as Executors, etc., of FREDERICK C. STEVENS, Deceased, Respondents, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

Fourth Department, May 3, 1918.

Insurance — loan to insured by insurer secured by pledge of paid-up policies — bailment — respective rights of parties — provision for foreclosure of equity of redemption without notice — assignment construed — waiver of forfeiture by pledgee — extension of time of payment — notice of time and place of subsequent forfeiture essential — demand that pledgor pay interest only at date of maturity — agreement of insurer to carry policy although interest is not paid — pleading — allegations establishing waiver — practice — direction of verdict — failure of defendant to request to go to jury.

Where the owner of fully paid life insurance policies assigns them to the insurer as security for the payment of a loan to him, a trust relation arises by implication of law. The insurer as pledgee takes a qualified title as indemnity to the loan, and until this is lawfully foreclosed an equity of redemption continues in the pledgor. In order that the equity may be foreclosed there must be a demand of payment of the loan and reasonable notice to the borrower of the time and place of sale or forfeiture.

However, the borrower as an inducement to the loan may stipulate a waiver of demand of payment and notice of sale or forfeiture, which waivers do not violate public policy.

Where the written contract of assignment, among other things, provided that in the event of the failure of the insured to pay his notes on the due day, or in the event of the non-payment of interest, the insurer could cancel the policies without further notice and without further demand for payment and apply the surrender value of the policies on the notes and pay the balance, if any, to the insured, and further provided that the payment of the loan could be extended upon the request of either party for six months or one year upon the payment of certain premiums and accrued interest, the insurer by demanding only the payment of interest at the time the notes became due elected to waive its right of forfeiture for non-payment of the principal, and it cannot thereafter arbitrarily cancel the policies under the terms of the assignment without making a further demand for payment of principal and giving to the insured notice of the time and place of sale and forfeiture.  This, because a definite due date is indispensable to the right of foreclosure and forfeiture without notice.  In other words, the extension of time without fixing a new due date constituted a waiver of the right of the pledgee to foreclose or forfeit without notice and demand under contract authority.

Where a party has a right of forfeiture created by contract and limited to a particular time for the enforcement thereof, and he extends that time, and the other party in reliance upon such extension has permitted the contract time to pass without performance, the holder of the right of forfeiture cannot recall such consent to extension and treat the non-performance within the original time as a breach of contract.  He must thereafter make formal demand for performance and give to the other party reasonable notice of the time and place of the enforcement of the forfeiture.

Where after the maturity of the notes the insurer made a demand for the payment of interest only in a notice which stated that the loan might be repaid in small installments at any time there was a waiver of forfeiture and an extension of time of payment.

So, too, a statement in the notice that if the premiums on the policies be paid in cash and the interest be not paid the latter will be added to the principal and the new amount shall bear interest and the loan be extended automatically for the period for which the premium has been paid, amounted to an explicit notification that the loan would be carried during the lifetime of the policy, which was paid up, even if the insured did not pay interest.

Where the facts aforesaid were fully set forth, the insurer cannot defeat a recovery upon the ground that a waiver by it was not alleged by the plaintiff, for the facts implied a waiver and an allegation thereof would be a mere conclusion.

Where both parties moved for a direction of a verdict and the defendant made no request to go to the jury any question of fact determined by the directed verdict is binding upon the defendant.

MERRELL and FOOTE, JJ., dissented, with opinion.

APPEAL by the defendant, The Mutual Life Insurance Company of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Wyoming on the 19th day of June, 1917, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 28th day of April, 1917, denying defendant's motion for a new trial made upon the minutes.

*Frederick L. Allen* [*Daniel M. Beach* and *Murray Downs* of counsel], for the appellant.

*Stevens & Reynolds* [*Louis L. Babcock* of counsel], for the respondents.

LAMBERT, J.:

On January 24, 1900, Frederick C. Stevens procured the defendant to issue to himself upon his life five equal policies of insurance, aggregating $100,000. The policies were payable upon his death to his personal representatives. The annual premium of each policy was $757.40, and assured paid the premiums until 1906, when he made default.

A new arrangement was subsequently made between the defendant and the assured. The defendant issued to him, in the place of the five lapsed policies, five separate paid-up policies for the sum of $4,120 each, aggregating $20,600, payable upon his death to his representatives. The policies were precisely alike, except as to numbers identifying them.

On May 16, 1914, the assured applied to the defendant for a loan upon the five reissued policies. In accordance with its practice the defendant on said date loaned to the assured upon each policy the sum of $1,837, the loan value thereof as determined by it, aggregating $9,185. The assured executed and delivered to the defendant five notes and five written assignments of said policies as collateral security to the payment of the notes, all identical in form, except as to the numbers of the policies to which they referred. These documents were the usual printed forms, drafted and furnished by the defendant.

By the terms of the notes the assured promised to pay to the defendant at its office, New York city, on January

24, 1915, without grace, the sum of $1,837, with interest thereon at the rate of six per cent per annum. The executed assignment of the policies provided and recited that the insured had deposited with and assigned to the defendant the policies referred to, designated by its respective number, as collateral security for the payment of said " note."

The assignment agreement further provided that the assured might repay said note with accumulated interest prior to its maturity, whereupon it would be automatically canceled and the policy returned.

It also provided that the payment of said loan upon the request of either party (to the note) and without notice to any other party thereto might be extended for " six months or one year " upon payment of certain premiums and accrued interest, not necessary here to consider.

The default or defeasance clause of each assignment read as follows:

" In the event of failure to repay said note on the date when due as herein provided or in the event of the non-payment of the interest accrued thereon, the Company, without further notice and without further demand for payment, may cancel said policy as of the date of default, and apply to the payment of said note (with accrued interest), the sum of $1,920 (being the customary cash surrender consideration allowed by the Company as the surrender value of policies issued upon like terms and conditions) and pay the remainder of said sum (if any), on demand, to the parties entitled thereto.

" In case of any extension or renewal or extensions or renewals of this note, the foregoing provision for cancellation and surrender of the said policy shall be applicable, but in such case, in lieu of the above stipulated cash surrender consideration, the Company will pay, as a cash surrender value at the maturity of any such extension or renewal, subject to the deduction of the existing loan with accrued interest, the customary cash surrender consideration then allowed by the Company, on other policies issued and terminated upon like terms and conditions as this policy, which amount shall not be less than the above stipulated cash value."

It was then provided that in the event of the death of the

assured before the maturity or payment of the note, and while the policy was in force, the defendant would pay the face of the same, less the amount loaned and accrued interest.

On January 24, 1915, the date when said notes became due by their terms, the assured paid the interest thereon to said date. He made no other payments, either principal or interest.

On February 12, 1916, the defendant mailed five identical printed and signed notices to the assured, one relating to each note and the accompanying pledged policy, notifying him that the interest would become due January 24, 1916, and requested him to remit the *interest only* which was specified therein to be $110.68.

For greater accuracy we give the notice, *hæc verba* minus caption:

"WASHINGTON, D. C., *Feb.* 12, 1916.

"We beg to remind you that the interest on loan from Jan. 24, 1915, under your policy No. 1,022,243 in this Company will expire Jan. 24, 1916. We trust that before that time you will remit the amount as stated in the following table, that the insurance may not lapse. * * *

| | |
|---|---|
| "Int. on interest............................ | $0 46 |
| "Interest on loan........................... | 110 22 |
| | $110 68 |

* * *

"(Signed)          THOS. P. MORGAN.
                                        L.
                              "*Manager*"

On February 25, 1916, the defendant again mailed to the assured five notices or letters relating to these several policies by accurate numbers and referring to them as "paid up" and "due" January 24, 1916. "Int. on loan $110.22." These notices were likewise signed by Morgan, manager.

Again, it appears that there was another series of notices, having no date, mailed by the defendant to the assured, calling his attention to the fact "that the loan of $1837 obtained under this policy together with the interest of $110.22 will be payable at the company's home office on the date premium is due. * * *. If you wish to renew

and continue this loan, please remit  *  *  *  the amount of premium stated in the attached notice,  *  *  *  together with the interest on the loan, $110.22.  *  *  *  Loan No. 7626D. due Jan. 24–16." It further gave notice as follows: " Policy loans may be repaid by insured in full or in part payments of $10.00, or multiples thereof at any time with interest if any Pol. #1022247."

On March 9, 1916, the defendant, without notice or demand of payment, attempted to cancel as of January 24, 1916, each of the policies pledged as collateral. This was sought to be accomplished by placing a printed slip upon each policy declaring the same forfeited and canceled. It thereupon applied the cash surrender value of each policy to the amount due upon the notes on January 24, 1916, leaving a surplus balance of $143.66. This sum was sufficient to have carried this insurance loan for a further period of upwards of three months.

On the evening of March 14, 1916, the defendant mailed from its Washington office, addressed to the assured at Attica, N. Y., its checks payable to him, dated March 13, 1916, for such balance, and five notices likewise dated March 13, 1916, notifying him that each of the policies had been forfeited and canceled for non-payment of the respective loans and interest, as of January 24, 1916. The assured died on March 14, 1916, and about the time of the deposit of this letter addressed to him in the Washington post office. It was conceded on the trial that these checks and notices thus made never reached the assured. The plaintiffs have had a verdict directed by the trial court at the close of the evidence for the face value of the policies, less the amount due upon the notes.

The correctness of this ruling is here for review.

There is no contradiction in the evidence. There is dispute only respecting the value of the proof furnished by the evidence. The pledging of the policies constituted, in law, a bailment. Under these circumstances, a trust relation arose by implication of law. The defendant as pledgee took a qualified title as indemnity to the loan. Until this was lawfully foreclosed, an equity of redemption continued in the pledgor. Unincumbered by contractual limitations or conditions, the law permitted the lender (upon default by the borrower) to

foreclose the pledge, or, in this instance, to forfeit and cancel the subject of the pledge. To accomplish this it was indispensable to binding results that there be a demand of payment of the loan and reasonable notice to the borrower of the time and place of sale or forfeiture. These were the duties imposed upon the pledgee to validate the enforcement of the bailment contract by it. (*Bailey* v. *American D. & L. Co.*, 52 App. Div. 402; affd., 165 N. Y. 672; *Toplitz* v. *Bauer*, 161 id. 325; *Wyckoff, Church & Partridge* v. *Riverside Bank*, 135 App. Div. 400–404.)

It has been held by numerous cases that the borrower, as an inducement to the loan, may stipulate a waiver of demand of payment and notice of sale or forfeiture. A waiver thus stipulated does not violate public policy. (*Clare* v. *Mutual Life Ins. Co.*, 201 N. Y. 492, 498.)

The right and privilege of waiving rests in the competency of the parties to fix the terms, upon which, in the event of non-payment of the debt, the collateral security may be summarily utilized to pay the obligation.

The permissive power of contract is the basis of the claim of the defendant here. It asserts that, by the terms of the assignment contract, the pledgee waived demand of payment and notice of time and place of forfeiture of the policies in question.

The contract fixed the time of forfeiture as the day that the debt became due by the terms of the writings between the parties. It fixed the place as the office of the defendant. On that due date, undoubtedly, the defendant had the right to forfeit and cancel these policies without demand or notice to the borrower. It was so stipulated in the contract of assignment. It elected to waive its right to forfeit on or as of that date. It so concedes, but claims that a definite, future due date was fixed (as permitted by the terms of the assignment contract) by an extension or renewal of the notes for one year. To my mind that is the pivotal question in the case.

In support of its contention it is alleged in the answer that, at the request of intestate, the notes in question were renewed or extended for the period of one year. There is not, within the covers of the record, any evidence that any request or suggestion of extension for a year was made. Acting, how-

ever, upon the assumption of a postponed due date to January 24, 1916, the defendant, because of default in payment of the debt by intestate, as of that day, forfeited and canceled the policies in question and applied the surrender value thereof to the payment of the notes. This concededly it could not do unless these debt obligations had been extended pursuant to agreement of the parties. The assignment contract permitted extensions but it fixed the conditions upon which they could be made. In construing this contract it should be borne in mind that a definite due date is indispensable to the right of foreclosure and forfeiture without notice. The purpose of fixing the due date, in contracts of this kind, in that the intestate or borrower should have notice of the time of foreclosure and forfeiture. If foreclosure and forfeiture occurred under the rules of law applicable, notice would be given him of time and place. The time and place of forfeiture was fixed by the contract and all parties stipulated to waive notice of that day so fixed. I take it, under those circumstances, this contract cannot be construed to give to defendant the right to arbitrarily fix a due date of this loan without request and without knowledge of or notice to a debtor and then justify a foreclosure and forfeiture of these policies on such date without notice and demand.

The terms of the contract did not extend the due date of these obligations. It provided terms and conditions upon which they could be extended. Such were not observed. They were ignored. It took the same formalities of mutual benefits and promises to make an effective extension as was required in the original transaction of the loan. To hold that the defendant might fix the time without the consent of or even notice to the insured would be to deprive insured of any knowledge or information of the time and place when his property would be forfeited and absorbed by defendant. A definite due date, as before stated, was the essential of defendant's right to forfeit and cancel these policies without notice. It arbitrarily fixed that date as the due date of these loans without request or notice. It is not contended that intestate knew or had been notified that defendant claimed that these debts had been extended to that date until the notices given by defendant in February, 1916.

The extension of time, without fixing a new due date, constituted a waiver of the right of pledgee to foreclose or forfeit, without notice and demand, under contract authority.

Forfeitures are not favored in law and hence there has arisen the technical doctrine of a waiver which has been applied by the courts for the apparent purpose of defeating forfeitures. That doctrine is, that if a party has a right of forfeiture created by contract and limited to a particular time for enforcement thereof, if he extends that time and the other party in reliance upon such extension has permitted the contract time to pass without performance, the holder of the right of forfeiture cannot subsequently recall such consent to extension and treat the non-performance within the original time as a breach of contract. (*Thomson* v. *Poor*, 147 N. Y. 402.)

It is said that such an extension is a waiver of the right to enforce the forfeiture, which needs no new consideration to support it. Consideration is found in the reliance upon the waiver, resulting in non-performance within the contract time. When such a condition arises, the holder of the right of forfeiture does not possess the power to arbitrarily recall the waiver at his volition and suddenly enforce the forfeiture. His right of forfeiture is not taken away. But under general doctrines, before he asserts that right he must make formal demand for performance of the contract and give to the other party reasonable notice of the time and place of the enforcement of the forfeiture.

These doctrines have been many times judicially repeated. (*Franklin National Bank* v. *Newcombe*, 1 App. Div. 295; affd., 157 N. Y. 699; *Bailey* v. *American D. & L. Co.*, 52 App. Div. 402; affd., 165 N. Y. 672; *Gillet* v. *Bank of America*, 160 id. 560; *Wyckoff, Church & Partridge* v. *Riverside Bank*, 135 App. Div. 400; *Toplitz* v. *Bauer*, 161 N. Y. 325; *Lindenthal* v. *Germania Life Ins. Co.*, 174 id. 76; *Arnot* v. *Union Salt Co.*, 186 id. 501, 511; *Small* v. *Housman*, 208 id. 124; *Morris* v. *Windsor Trust Co.*, 213 id. 27; *Schoenberg* v. *Mutual Profit Realty Co.*, 94 Misc. Rep. 203.)

In the facts are to be found other circumstances leading to the same conclusion of waiver by the defendant of its contractual right. The notices sent by the company contained explicit demand for payment of interest only. In them is

to be found the statement that the loan might be repaid in partial payments of ten dollars or multiples thereof at any time, with interest.

And upon the back of such notices is indorsed the statement that if the premium of the policy be paid in cash and the interest upon the loan be not paid, then that such interest will be added to the principal; that such new amount shall bear interest and the loan be extended automatically for the period for which the premium has been paid.

When these notices were sent all this insurance was in the form of paid-up policies. That is, all premiums to mature during the life of the insured had been paid.

In the first of these mentioned provisions is to be found ample justification for belief by the insured that the company was extending the time of payment and offering to him new terms of payment for his convenience.

In the latter of such provisions is to be found explicit notification that his loan will be carried during the lifetime of the policy, even if he does not pay the interest.

Upon the trial full responsibility for the sending of these notices was accepted by the defendant. Such notifications require, as a matter of law, that we should hold that there was indefinite extension of the maturity date of these loans. (*Bailey* v. *American D. & L. Co.*, 52 App. Div. 402; affd., 165 N. Y. 672.)

The defendant places its greatest reliance upon *Clare* v. *Mutual Life Ins. Co.* (201 N. Y. 492). It seeks to justify, upon that authority, summary forfeiture of this collateral as above recited. That case permits of no such construction. There the forfeiture took place on the due date fixed by the contract. The pledgor had specifically waived notice and demand as to that date, and the court only held that such waiver was effectual to make legal the foreclosure at that time. The power of the surrogate to authorize the guardian to so waive in connection with a pledge of a life policy was the principal question decided by that case.

The doctrine announced in *Toplitz* v. *Bauer* (*supra*) and the other similar holdings is again approved in the most recent cases of the Court of Appeals. (*Small* v. *Housman*, 208 N. Y. 115; *Morris* v. *Windsor Trust Co.*, 213 id. 27.)

It is urged that the plaintiffs cannot predicate a right of recovery upon an unpleaded waiver of defendant. This contention is without merit. The facts are fully alleged. The complaint specifically sets forth extensions of time of payment and the maturity of the policies prior to the expiration of such extensions. This is a sufficient allegation of waiver. To specifically designate these facts as constituting a waiver would be but pleading a conclusion. The essential facts are alleged. The action is founded upon the policy and not upon a waiver.

If we assume, however, that a question of fact was, upon the evidence, raised upon the question of defendant's waiver, then defendant is bound by the direction of a verdict. At the close of the evidence both parties asked for a direction of a verdict. The defendant's counsel in connection with his motion for a direction stated that he reserved his right to go to the jury upon any question of fact. This was not a request to go to the jury on any question. The law reserved to him all the rights that he sought to reserve. The case concluded with a long discussion between court and counsel. The court eventually announced: "I am satisfied on this evidence that it would not be permissible to find a verdict against the plaintiffs and in favor of the defendant, so I am going to assume the responsibility of passing upon the law *and passing upon the facts*, both parties having moved me for a verdict in their favor," etc. The defendant at that time made no request or at any other time that any fact be submitted to the jury. It consented that the facts be passed upon by the court if any question of fact was presented by the record.

The judgment should be affirmed.

All concurred, except FOOTE and MERRELL, JJ., who dissented and voted for reversal and dismissal of the complaint in an opinion by MERRELL, J.

MERRELL, J. (dissenting):

Plaintiffs have recovered judgment against defendant in the aggregate amount of $11,802.13 upon five paid-up policies of life insurance issued by the defendant to plaintiffs' testator on January 24, 1900, and all of which policies plaintiffs insist were in full force at the time of the death of the assured,

which occurred on March 14, 1916. The defense interposed was that said several policies had been delivered to defendant as collateral security for a loan made by defendant to the assured upon each policy as evidenced by a loan agreement executed by the assured as to each, and that the assured having defaulted in paying the moneys loaned on the policies, defendant had, prior to the death of the assured, in accordance with the provisions of the loan agreements, canceled said several policies, and that, therefore, said policies were not outstanding at the time of the death of the assured.

The question at issue herein is as to whether said policies were in fact canceled by defendant prior to the death of the assured. The pertinent facts upon which this controversy arises are as follows:

The assured, Frederick C. Stevens, was a resident of Attica, N. Y. He was a man of large business affairs. For many years he had been a banker and a man of large financial interests at home and in the city of Washington. On January 24, 1900, Mr. Stevens procured the issuance by defendant, the Mutual Life Insurance Company of New York, to himself, on his life, of five policies of life insurance, numbered 1022241, 1022243, 1022245, 1022247 and 1022249, respectively. These five policies were identical save for their numbers. By each policy the Mutual Life Insurance Company of New York promised to pay at the head office of said company in the city of New York unto said Frederick C. Stevens, his executors, administrators or assigns, the sum of $20,000 upon acceptance at its head office of satisfactory proof of the death of said assured. Said policies were conditioned upon the payment by the assured of an annual premium of $757.40 on each policy. Such premiums were paid annually by the assured on the twenty-fourth day of January in each year until 1906, when default was made in payment of the premiums due thereon on the twenty-fourth of January of that year. The policies thereupon lapsed, and a new arrangement was made between the company and the assured whereby said policies were converted into five paid-up policies for the sum of $4,120 each, being straight life policies, the sum of $4,120 being payable on each policy only upon the death of the sasured. On these policies the assured was not required to

pay annual premiums. In such condition these five paid-up policies of $4,120 each were held by the assured until May 16, 1914, when he applied to the defendant for loans thereon, and on said date the defendant, in accordance with its practice in such case, loaned to the assured upon each of said policies the sum of $1,837, said sum being the amount which the assured might borrow on each policy. As collateral security for said several loans the assured delivered to the insurer the five policies of insurance to be held by said company in accordance with the provisions of a loan agreement as to each policy concurrently executed by the assured and delivered to the company. These five loan agreements were identical in form, except as to the numbers of the policies to which they referred, and were in the following form:

" $1837                     NEW YORK, *May* 16, 1914

" On Jan. 24, 1915, without grace I promise to pay to the order of The Mutual Life Insurance Company of New York, One thousand eight hundred and thirty-seven Dollars, with interest at the rate of 6 per cent per annum at the office of said Company in the City of New York, for value received, having deposited with and assigned to said Company Policy No. 1022241 as collateral security for the payment of this note, as herein provided.

" The application of the foregoing amount is hereby approved as follows:

| | | |
|---|---|---|
| " Amount of loan | $1,837 | 00 |
| " Adjustment for interest on premiums | $——— | |
| " To pay loan No.....due......191 on Policy No....... $.................... | $........ | |
| " Accrued interest on Loan No..... 191...... $...... | | |
| " To pay premiums on said policy to....191...... $...... | | |
| " Adjustment for interest on premiums | $........ | |
| | $1,837 | 00 |

" Balance by Company's check...........................

" The borrower may pay this note, with accrued interest at any time prior to the date when due, and when so paid

together with all other indebtedness in respect of said policy this loan note will be automatically cancelled, and the Company will return the policy.

" The time for the payment of this loan may, from time to time, upon request of any of the parties hereto and with or without notice to the other parties, be extended for a period of six months or one year, upon payment of any premium on the policy necessary to cover the period of any such extension and payment of interest which shall have accrued at the maturity of the loan.

" In the event of failure to repay said note on the date when due as herein provided or in the event of the nonpayment of the interest accrued thereon, the Company, *without further notice and without further demand for payment,* may cancel said policy as of the date of default, and apply to the payment of said note (with accrued interest), the sum of $1,920 (being the customary cash surrender consideration allowed by the Company as the surrender value of policies issued upon like terms and conditions) and pay the remainder of said sum (if any), on demand, to the parties entitled thereto.

" In case of any extension or renewal or extensions or renewals of this note, the foregoing provision for cancellation and surrender of the said policy shall be applicable, but in such case, in lieu of the above stipulated cash surrender consideration, the Company will pay, as a cash surrender value at the maturity of any such extension or renewal, subject to the deduction of the existing loan with accrued interest, the customary cash surrender consideration then allowed by the Company, on other policies issued and terminated upon like terms and conditions as this policy, which amount shall not be less than the above stipulated cash value.

" In the event of the death of the insured before the maturity or payment of the note, and while said policy is in force, the amount of said note, with accrued interest, will be deducted from the amount payable on the policy, the balance being payable to the person or persons entitled thereto.

" In Witness Whereof I have hereunto set my hand the 11th day of May Nineteen Hundred and fourteen.

" Witness V. B. DEYBER,    FREDERICK C. STEVENS

     " Washington, D. C.         Washn D C Insured "

Upon each of said loan agreements the insured borrowed of defendant the sum of $1,837, receiving in the aggregate from the defendant on said 16th day of May, 1914, the sum of $9,185. Neither of said loans was ever repaid by the assured. On January 24, 1915, the date when said notes by their terms became due and said loans were payable, the assured paid the interest thereon to said date. While the evidence does not clearly show an extension of payment of the loans, inferentially it appears that payment was extended one year or until January 24, 1916. The company had the right to continue the loans for one year after due without notice to the borrower, and seems to have so acted. No further payment either of principal or interest was ever made upon either of said notes, and on March 9, 1916, forty-five days after the expiration of the extended period, in accordance with the practice of the company to allow said period of grace, the defendant canceled, as of January 24, 1916, each of the policies held as collateral security for said notes respectively, applied the cash surrender consideration of each policy to the payment of the amount then due upon the loan agreement to secure which the company held such policy, and on March 13, 1916, mailed to the assured a check covering the excess of such cash surrender value over the amount due on each note, together with notice of such cancellation and application. Frederick C. Stevens, the assured, died on March 14, 1916, before said checks and notification reached him.

Defendant's witnesses testify that the policies were canceled in accordance with the custom and as prescribed by the rules and practice of the defendant company. The policies were declared canceled by an officer of the company exercising the authority conferred upon him by the company, and upon each policy was placed a slip declaring the policy canceled. The five cancellation slips, except as to numbers, were identical in form, as follows:

" Policy No. 1022241 is hereby cancelled as of the 24 day of Jan. 1916 for non-payment of loan due on said date.

" CHARLES H. WARREN,

" 10 M 39 1916.          *Treasurer.*

" P. L. 171–10M–11–15          Per H "

Interest was thereupon computed upon each of the five loans from January 24, 1915, to January 24, 1916, and found to be $110.22, making the amount due on each $1,947.22. The customary cash surrender consideration was computed and found to be the sum of $1,976 in the case of each policy. From the cash surrender consideration as to each policy was deducted the amount of the loan, with interest, $1,947.22, leaving a balance due the assured on each policy of $28.78. Two checks were drawn by defendant, one for $28.78 for the excess on policy No. 1022245, and the other for $115.12, covering a like excess on the remaining four policies. These checks were mailed to the assured on March 13, 1916, and accompanying same were five letters, identical in form, except as to number of policy to which it related, in following form:

" WASHINGTON, D. C.

" THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.
    " Nassau Cedar Liberty and William Streets
" Policy Loan Department

" NEW YORK, *Mar.* 13, 1916

" In all communications refer to the policy number.

" Mr. F. C. STEVENS:

" DEAR SIR.— You are hereby advised that the loan of $1,837 payable Jan. 24, 1916 on Policy No. 1022243, was not paid or renewed at its maturity.

" The Company has therefore been obliged to cancel the policy in accordance with the terms of the loan note, and has applied the cash surrender consideration of $1976 in payment of said loan as provided under the terms of the loan note; *viz:*

" Value of Policy — Cash Surrender Considera-
    tion......................................$1,976 00
" Less Loan now satisfied.......... $1,837 00
" Interest on Loan.................    110 22
                                   ———————    1,947 22

" Balance for which check is enclosed........    $28 78
                    " Yours truly,"
                    " F. W. MERCER.
" FEA            *Superintendent of Policy Loans.*"

These letters and inclosed checks failed to reach the assured before his death.   He died suddenly.   He was in good health on March 14, 1916, until sometime in the afternoon when he was suddenly stricken, dying a few hours later.   It is the contention of the plaintiffs that the payment to the assured in his lifetime of the surplus of the cash surrender consideration left after satisfying the loan made on each policy was a necessary step in the cancellation of the policy, and not having been made during the lifetime of the assured, the attempted cancellation was not effected and that the five policies were all in force at the time of the death of the assured.   The learned trial court so held and directed a verdict in plaintiffs' favor for the aggregate amount of the five policies less the aggregate loans thereon made to the assured with interest to the date of his death.   Judgment thereon has been entered in favor of plaintiffs and against defendant.

I think the judgment should be reversed.

It is the contention of the plaintiffs that the payment of the remainder of the cash surrender consideration after satisfying the amount loaned with interest was a part and parcel of the act of cancellation, and that until the assured had been notified of such surplus the cancellation was not complete.   I am unable to adopt that view.   The loan agreement executed by the assured in each case was in its terms clear and unequivocal. Primarily it was a negotiable promissory note whereby Stevens promised to pay to the order of defendant on January 24, 1915, $1,837, with interest at the rate of six per cent per annum, at the office of the payee in New York, for value received.   Then follows a statement of the deposit with and assignment to the company of the policies of life insurance as collateral security for the payment of the note, " as herein provided."   By the terms of the agreement the borrower might pay the note, with accrued interest at any time prior to the date when due, and when so paid together with all other indebtedness in respect of the policy, the loan should be automatically canceled, and the company would return the policy.   The procedure to be adopted by the company in case of default in paying the loan as provided by the agreement is laid down as follows:

" In the event of failure to repay said note on the date

when due as herein provided or in the event of the nonpayment of the interest accrued thereon, the Company, *without further notice and without further demand for payment,* may cancel said policy as of the date of default, and apply to the payment of said note (with accrued interest), the sum of $1920 (being the customary cash surrender consideration allowed by the Company as the surrender value of policies issued upon like terms and conditions) and pay the remainder of said sum (if any), *on demand,* to the parties entitled thereto."

It will be seen that when a default occurs in payment of the note as therein provided or in the event of the non-payment of interest accrued thereon, the company, " *without further notice and without further demand for payment,*" might cancel the policy as of the date of default and apply in payment of the note, with interest, the specified cash surrender consideration allowed by the company and pay the remainder (if any) " *on demand* " to the parties entitled thereto. The cancellation was an act by itself entirely separate and distinct and the application of the cash surrender consideration to the payment of the note and payment of any balance to those entitled thereto were the aftermath of such cancellation. Not as a part, but as a result of the cancellation was the payment to the assured of any balance remaining after satisfying the loan from the cash surrender consideration. In this case the assured was a business man of wide experience. He must have fully understood and appreciated the terms of the agreement which he executed. He knew the consequences of his failure to pay principal and interest when due. The agreement plainly provided that upon default in payment the company " *without further notice and without further demand for payment* " might cancel the policies. It seems idle to say that under such plain and unambiguous language as that used in these loan agreements, the assured could ask notice or warning of the cancellation of policies which he had delivered as security for the loans. By the terms of the agreement to which he had set his hand he was entitled to no notice of cancellation. While the company in this case, after ascertaining the amount of balance of the cash surrender consideration remaining after satisfying the loans, drew its checks and mailed them to the assured with letters advising of the

cancellation of the policies, such course on its part under the agreement was wholly gratuitous, as the remainder under the terms of the agreement was payable only " *on demand.*" The agreement does not provide any particular form or procedure to be adopted to effect a cancellation of a policy. There is no statutory requirement with reference thereto, and so long as the company acted in accordance with its usual custom it did all that was required. (*New York Security Co.* v. *Saratoga Gas Co.,* 88 Hun, 569, 586.)

The cancellation was an independent act complete in itself, and preliminary to the application of the cash surrender consideration to the discharge of the indebtedness represented by the note. Having canceled the policy and having applied the cash surrender consideration in discharging the indebtedness of the assured, under the terms of the loan agreement the company held the remainder, if any there might be, subject to the demand of the assured or those entitled thereto. The company was not bound to pay such remainder until such demand. In case of failure to pay the same on demand the assured or those entitled to it might recover the same of defendant in a suit at law. How then can it be said that notification of the existence of such remainder or payment thereof to the assured was any part of the act of cancellation of the policies? To so construe the loan agreement is to read into it provisions which it does not contain and to ignore its plain and unambiguous language. The loan agreement provides that the company may cancel upon mere default on the part of the assured in making the payments " *when due as herein provided.*" The borrower having defaulted in making the payments specifically provided, the agreement which he had signed did not provide that he should receive further warning or demand, but on the contrary explicitly provides that upon his failure to pay the note as therein provided the company may cancel the policy held as collateral security " without further notice and without further demand for payment." Nothing could be plainer. To so interpret the instrument as to require notice of cancellation is to utterly ignore the plain language of the instrument and to require the company to do something of which it is expressly relieved.

The assured was a free agent and certainly might legally

agree as he did to waive notice and demand of payment. The agreement provided a method of realizing upon the policies and it was permissible for the parties to agree between themselves to dispense with notice and demand. (*Clare* v. *Mutual Life Ins. Co.,* 201 N. Y. 492, 498.)

The act of the company in attempting to forward to the assured the balance of twenty-eight dollars and seventy-eight cents remaining on each policy is quite immaterial. It was a gratuitous act on its part not required by the terms of the loan agreement. Had the checks and accompanying notifications reached the assured prior to his decease I apprehend no one would have had the temerity to suggest that in canceling the policies the company had in any way exceeded its rights. The moneys would have been accepted by the assured, without question, as salvage remaining after satisfying his indebtedness.

Failure to give Mr. Stevens notice of the impending cancellation of his policies resulting from his default in nowise affected his rights. Had notice been given him it would have been an idle ceremony without resultant benefit to the assured. He had failed to pay as he had agreed, and as a result it was the company's right to cancel the policies. Stevens could not, if he wished, reinstate the policies, nor could he then extend the loan by paying the overdue interest. He had signed away his day of grace. Even had he been notified, the very most he could have done was to have demanded payment of the surplus of twenty-eight dollars and seventy-eight cents on each policy. Such payment was in fact made by the company without demand as a matter of courtesy.

I am not unmindful of the fact that the loan agreement was prepared by the company and that the same should be liberally construed in favor of the assured. Were this instrument ambiguous or equivocal in its terms there would be every reason for the application of such rule of liberal interpretation. But here we have an agreement in language so clear and readily to be understood that a judicial construction of its meaning is unnecessary. No one of ordinary intelligence could mistake its meaning, much less a man of the mature business experience of the assured.

It is quite evident that in holding that it was incumbent

upon the company to pay or tender to the assured in his lifetime the remainder of twenty-eight dollars and seventy-eight cents on each policy, or at least that the insured be notified of the fact that the company held such remainder subject to his demand, before a cancellation of the policies became effective, the learned trial court may perhaps have confused such cancellation with the cancellation of fire insurance policies. In the latter case the act of cancellation is governed by express provision of the New York standard form of fire insurance policies, requiring the company desiring to cancel a fire insurance policy to give the policyholder five days' written notice of such cancellation, and as a part of such cancellation to return the unearned portion of any premium paid by the assured. Section 122 of the Insurance Law (Consol. Laws, chap. 28; Laws of 1909, chap. 33), relative to cancellation of fire insurance policies, requires the company as a part of the act of cancellation to return to the insured or his legal representatives the amount of the premium paid, less the customary short-rate premium for the expired time of the full term for which the policy has been issued. No such provision is contained in these policies of life insurance, nor in the loan agreements, and our attention has not been called to any statute or court decision requiring notice or payment in case of life insurance policies.

The suggestion is made that the default upon which defendant acted, and by virtue of which it undertook to cancel the policies, was in the assured failing to pay the principal and interest upon the notes at the expiration of the extended period, and that the provisions contained in the agreements as to payment of the surplus on demand to the assured, or to the persons entitled thereto, are not applicable to such a situation. I can see no force in that suggestion. The agreements expressly provide that in case of any extension of the notes, the provisions of the agreements for cancellation and surrender of the policies, in case of non-payment when due, shall be applicable. It is also urged that payment of the balance remaining after deducting the amount of the note, with accrued interest, from the amount payable on the policy must under the terms of the agreement be made to the person or persons entitled thereto, in case of the death

of the insured before the maturity or payment of the note. But it will be seen that the further condition is provided that such policy shall be in force at the time of the death of the assured, and where as in this case the policies are not in force but have been canceled prior to death such provision can have no application. In any event I think the procedure provided in case of default occurring at the expiration of the extension of payment, or in the event of the death of the assured before payment of the note, relates back and is governed by that prescribed in case of failure to pay the sum loaned when originally due as provided by the loan agreement.

Upon the trial plaintiffs sought to predicate a waiver, on the company's part, of the terms of the loan agreement from the sending of various notices from the company to the assured in the month of February, 1916, upon forms of the company and which clearly had no bearing or application to existing relations between the company and the assured. It was shown that the sending of such notices was the blunder of an incompetent clerk unfamiliar with existing business relations between the company and the assured. The latter could have been in nowise misled thereby.

Two sets of notices, one for each policy, are claimed to have been mailed by the defendant to the assured. The first set, all in identical form, bear date on *February 12, 1916,* and purport to call the attention of the assured to the fact that interest on his loan " will expire Jan. 24, 1916," and asking remittance therefor and stating that certain complications will result " unless remittance is received here on or before the above date of expiration " (January twenty-fourth preceding). The second set of notices bear date on February twenty-fifth, and are still more incoherent, and purport to relate to a lapse of policy and suggesting that the company can possibly assist the assured with a loan if it is inconvenient to pay the premium and inviting further negotiation with a view of restoring the policy.

The inapplicability of these notices if ever received by the assured must have been apparent to him. If they reached him it was at a time long after he had forfeited any rights under the policies save as provided in the loan agreements. No one could reasonably interpret them as manifesting any

intention by the company to waive its rights under said agreements.

Moreover the evidence fails to show directly that either of these notices was ever received by the assured, and there is no basis for the assertion that he was misled or lulled into a sense of security thereby. (*Fowler* v. *Metropolitan Life Ins. Co.*, 116 N. Y. 389.)

The action of the trial court is sought to be upheld from the fact that both parties moved for the direction of a verdict, the defendant refraining from asking to go to the jury upon the facts, and thus it is claimed impliedly waiving such right. It is true that defendant, at the close of the entire case, made a motion to dismiss the complaint and for the direction of a verdict in favor of the defendant upon the issues generally. Such motion was, however, made conditionally under the express reservation stated by counsel for defendant that " if that motion be denied, it may be said there is no question of fact here. We would reserve our right to go to the jury on the question of fact, whatever it be." I do not think under such circumstances that defendant waived the right to go to the. jury. Had there been any question of fact, it should have been submitted to the jury. (*Pneumatic Signal Co.* v. *Texas & Pac. R. Co.*, 200 N. Y. 129; *Brown Paint Co.* v. *Reinhardt*, 210 id. 162; *Second Nat. Bank* v. *Weston*, 161 id. 520.)

But there was no question of fact presented. The court clearly was of the opinion that no question of fact was involved and passed upon the questions as matters of law. The record clearly indicates that the court could discover no question of fact to be decided and directed a verdict in plaintiffs' favor because of the fact that it did not appear that the assured had actual notice of the cancellation of the policies, the application of the cash surrender consideration to the payment of the loan, and that there remained in the company's hands payable to him on demand the remainder of twenty-eight dollars and seventy-eight cents on each policy. As matter of law the court held in the absence of such notice to the assured in his lifetime that there had been no cancellation and that the policies remained in full force at his death. The court, we think, made an erroneous decision upon

unchallenged facts. The judgment cannot be sustained upon such technicality of practice urged by respondents.

The judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs to the appellant.

Judgment and order affirmed, with costs.